UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Hiral Patel,** ) | |
|        **Plaintiff** ) | |
| ) | Civil Action No.: _____ |
| v. ) | |
| ) | |
| **Genesis HealthCare** ) | |
| **Corp. and Aetna, Inc.** ) | |
| ) | |
|        **Defendants** ) | |

## COMPLAINT

This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001 et seq., ("ERISA" or "the Act"), and more particularly § 502(a)(1)(B) and § 502(c) of the Act, 29 U.S.C.A. § 1132(a)(1)(B), 1132(c). This Court has jurisdiction of this matter under 29 U.S.C.A. § 1132(e).

## I. Parties

1.  The Plaintiff, Hiral Patel ("Dr. Patel") currently resides in the Windham, Rockingham County, New Hampshire. She is a qualified participant in a Genesis Health Care, Long-Term Disability Plan within the meaning of 29 U.S.C.A. § 1002(7) of ERISA.

2.  The Defendant, Genesis HealthCare Corporation, is the Plan Administrator according to the terms of the Genesis HealthCare Benefit Plan. Genesis HealthCare Corporation is a Pennsylvania Corporation with a principal place of business at 101 East State St., Kennett Square, PA 19348.

3.  The Defendant, Aetna Life Insurance Company ("Aetna"), is a division of Aetna, Inc., a Pennsylvania business corporation with its principal place of business

1

at 151 Farmington Avenue, Hartford, Hartford County, Connecticut. Aetna underwrote the Genesis HealthCare Benefit Plan ("the Plan" or "the Disability Policy") at issue in this action, and served as the administrator and fiduciary of the plan.

## II. Factual Background

4.      Dr. Patel is a 42-year-old physician who has been licensed to practice medicine since September 7, 2005, and was employed by Genesis Physician Services, a subsidiary of Genesis, Inc., from July 23, 2014 to October 31, 2016.

5.      Genesis procured from Aetna the Disability Policy for the physicians employed by Genesis Physician Services. That Plan became effective on January 1, 2013.

6.      While employed by Genesis Physician Services, Dr. Patel served as the medical director of two different Genesis facilities, the Ridgewood Center in Bedford, New Hampshire and the Hackett Hill Health Care Center in Manchester, New Hampshire. Genesis also had Dr. Patel work at other nursing homes throughout southern New Hampshire.

7.      During the time period she worked for Genesis, Dr. Patel was also employed on a per diem basis as a "hospitalist" by Parkland Hospital in Derry, New Hampshire.

8.      In 2012, Dr. Patel started seeing optometrists at New England Eye and Facial Specialists ("New England Eye") for routine eye exams. New England Eye is a medical practice conducted by ophthalmologist, Dr. Adam Beck.

9.      Beginning in October 2015, Dr. Patel began experiencing problems with blurred vision and pain in her eyes, which caused her great difficulty in examining

her patients, reading medical charts, and viewing a computer screen for any appreciable length of time. The use of a computer was an integral part of Dr. Patel's jobs both as a medical director for Genesis and a hospitalist for Parkland Hospital.

10.     On October 28, 2015, Dr. Patel was seen by optometrist Dr. Stanley, of New England Eye, for a routine examination. At that time, Dr. Stanley referred Dr. Patel to Dr. Beck for an urgent vision consult. Dr. Patel then saw Dr. Beck later that day. Dr. Beck advised her to return for a follow-up visit soon.

11.     On December 1, 2015, Dr. Beck gave Dr. Patel a diagnosis of "central serous chorioretinopathy," with bleeding of the left eye and macular edema (which had developed over the previous month) Dr. Beck recommended that Dr. Patel stop working until he could conduct a follow-up visit, and wrote a letter excusing her from work.

12.     Dr. Beck conducted a follow-up examination and concluded that Dr. Patel could not continue to work, and may never be able to work as a physician in her area of practice again. The Aetna policy at issue stated that Dr. Patel would meet the test of disability if she "cannot perform the **material duties** of [her] **own occupation** solely because of an **illness, injury** or disabling pregnancy-related condition. . . ." (Emphasis in original.)

13.     On December 15, 2015, Dr. Beck wrote a letter to Aetna explaining that Dr. Patel "is unable to perform the primary duties of her patient care due to her diagnosis" and that "[h]er prognosis is guarded at this point and may not improve."

14.     On March 1, 2016, Dr. Beck wrote that Dr. Patel's
> condition today shows no improvement in her vision in either eye, her vision acuity was 20/80 in her left eye and 20/40 in her right eye. She will need close follow-up care as her condition is worsening.

> Her diagnosis is Central Serous Retinopathy with Choroidal Neovascularization. She also has severe Macular Edema and will likely not improve.

15. On May 4, 2016, Dr. Beck completed an Aetna Attending Physician Statement in which he stated that Dr. Patel is unable to take care of patients and perform her duties as a physician because of the poor vision caused by her diagnosis of Central Serous Chorioretinopathy.

16. On May 18, 2016, Dr. Beck completed an Aetna Capabilities and Limitations Worksheet in which he again stated that Dr. Patel is unable to work.

17. On July 15, 2016, Aetna created an internal assessment report stating that

> there is support for impairment from prolonged reading, writing, and activity requiring fine print. Given the high level of risk to patient's health, claimant would be unable to substantially perform chart review, read labs data, etc. until vision improved. Recommend obtaining the 8/2016 OVN w/ Dr. Beck to assess for VA changes, ongoing complaints of blurred vision, distorted figures, dark spots in visual field. Functionability vs. Workability: As a physician claimant would need to have availability to read on a sustained and prolonged reading, she would be unable to perform occupation. Occupation: Attending Physician; Job Description Location: image 201347913: Work Capacity Code: Has Work Capacity; *Plan: Approve LTD claim* (emphasis added), refer for VRC assessment, Request medical 8/2016. 40 YO Attending Physician. Date last worked: 11/30/2015. Disability date: 12/1/2015.

18. On August 16, 2016, Dr. Yvonne M. Tsai, M.D. completed an Independent Medical Examination ("IME") medical report in which she wrote that Dr. Patel "certainly has the RPE detachments present, worse on her Left which *should be further examined by another Retinal specialist* for an opinion on the causation of the RPE detachments. She should furthermore be monitored for Glaucoma . . ." (Emphasis added).

4

19. Dr. Tsai reviewed only Dr. Patel's records from January 5th, 2015 to June 14th, 2016 according to her own report. She failed to review the entire medical record from October 2015 until the date of her IME evaluation of Hiral Patel on August 26th, 2016. Dr. Tsai submitted her report despite having failed to conduct a full review of Dr. Patel's ability to perform her job duties as a physician because of her diagnosis.

20. Dr. Tsai also had failed to conduct tests specifically associated with Dr. Patel's diagnosis. Dr. Beck and another ophthalmologist Dr. Patel would later see, Dr. Lauren Branchini, did or would perform these tests. Dr. Branchini's practice focuses on the medical treatment of diseases of the retina; she had completed a research fellowship in retinal imaging with Optical coherence tomography (OCT).

21.    On September 20, 2016, Peter Smith, Claim Team Leader for Aetna, wrote notes indicating that, because Dr. Tsai was not a retinal specialist, the team had decided to refer the matter to a retinal specialist for peer review.

22.    By letter dated September 20, 2016, Amy Labrecque, Senior Disability Risk Manager, requested that Dr. Patel agree to an additional IME by a retinal specialist. Ms. Labrecque called Dr. Patel to request an extension for this additional opinion, but she did not tell Dr. Patel that Aetna had exhausted its ERISA extension time to conduct its review of her claim and that, absent such an agreement, Dr. Patel could have demanded a final decision at that time. Attempting to be cooperative, Dr. Patel agreed to the additional examination.

23.    On October 3, 2016, Dr. Clifford Michaelson, an ophthalmologist retained by Aetna to review Dr. Patel's records, wrote a report stating that he is "unable to definitively answer whether or not Ms. Patel is capable of frequent/prolonged reading of charts, laboratory test results, either printed or on computer screen from December 2015 to current."

24.     Despite Aetna's prior determination that Dr. Patel's file be reviewed by a retinal specialist, the doctor Aetna chose, Dr. Michaelson, is not a retinal specialist. In fact, no retinal specialist would ever review Dr. Patel's case at Aetna's behest.

25.     Additionally, according to his own report, the only medical records pertaining to Dr. Patel that Dr. Michaelson reviewed were created between January 5th, 2016 and September 19, 2016. Dr. Michaelson thus failed to review any of the records created between October 2015 and January 5th, 2016, the time period when Dr. Patel received her specific diagnosis of Central Serous Retinopathy (while under Dr. Beck's care). Accordingly, Dr. Michaelson's failure to review some of the most important records during the period of his original diagnosis resulted in flawed medical conclusions.

26.     On October 6, 2016, Dr. Beck wrote a medical report describing the deficiencies in Dr. Tsai's IME report. He stated that Dr. Tsai is not a retinal specialist and did not perform essential tests on Dr. Patel, such as an OCT examination, a fluorescein angiography, or an ICG angiogram. Dr. Beck had performed all these tests on Dr. Patel in order to arrive at his diagnosis. Dr. Beck wrote the following:

> I stand steadfast in my assertion that Dr. Patel cannot work. She is advised to avoid reading and computer use which will give her eye fatigue and worsening of her poor vision . . . Dr. Patel has marked decreased vision in her left eye. As a physician, she is required to perform hours of reading, computer work and even fine motor procedures with injections and blood draws. She is not capable of performing these duties with her current visual acuity . . . Central serous retinopathy is directly related to stress work-related activities. Dr. Patel had several exacerbations of this condition. Her visual acuity is decreased and it will continue to worsen with continued eye strain.

27.     On October 25, 2016, Aetna issued a letter denying Dr. Patel's claim.

28. On January 3rd, 2017, another ophthalmologist who focuses on retina cases, Dr. Lauren Branchini, issued another opinion medical report letter after having examined Dr. Patel. As with Dr. Beck, Dr. Branchini concluded that Dr. Patel was unable to perform the primary duties of her occupation:

> With a nod to her professional capabilities, with this fluctuating vision, I understand that it will be very difficult to do near and distance work. The high level of stress associated with her profession may exacerbate her condition.

29. On April 19, 2017, Michael La Raia, Vocational Consultant of Solutions Consulting, wrote a Vocational Assessment Report in which he concluded that:

> Mrs. Patel's physical impairments preclude her ability to safely and effectively engage in work as a Physician and that functioning within her current medical status, relative to her compromised vision, may lead to 'expected' errors within the workplace and ultimately patients' health and safety will be put at risk.

30. On May 15, 2017, Dr. Beck wrote another letter stating that Dr. Patel is still unable to work and providing specific examples of how Dr. Patel's central serous chorioretinopathy causes blurry, patchy vision and thus precludes her ability to perform the primary duties of her occupation.

31. On July 18, 2017, Dr. George Yanik completed another independent physician review of Dr. Patel's medical records. He concluded that Dr. Patel could perform the material duties of her occupation with accommodations. However, Dr. Yanik's review was flawed because: (1) he never personally examined Dr. Patel, and (2) once again, despite Aetna's request for an additional independent examination by a retinal specialist, Dr. Yanik was not a retinal specialist. None of the independent examinations and reviews that Aetna arranged were by retinal specialists despite Aetna's expression of the need for one.

32. On October 2, 2017, Aetna issued a second and final letter of denial, which denied Dr. Patel's appeal of Aetna's original denial.

# COUNT I.

33. Dr. Patel hereby restates and realleges Paragraphs 1-32 of her Complaint.

34. Benefits due are vested under the Benefit Plan and Dr. Patel has complied with all conditions in order to receive such disability benefits under the Plan.

35. The Defendants erroneously credited information provided by an IME doctor to conclude that Dr. Patel's medical information did not support restrictions or limitations precluding her ability to perform the material duties of her occupation.

36. The Defendants acted in bad faith by denying benefits Dr. Patel based on a report by IME doctors who did not have the qualifications as a retinal specialist. The IME doctors retained by the Defendants did not specialize either in retinal diagnoses or retinal surgery.

37. The Defendants failed to credit evidence offered by Dr. Patel that firmly established her inability to perform the material duties of her own occupation. The Defendants also failed to provide for an unbiased physical examination of Dr. Patel as was required by the Plan.

38. The above-mentioned decisions to deny Dr. Patel's benefits due under the terms of the Benefit Plan were arbitrary, capricious, not made in good faith, unsupported by substantial evidence, erroneous as a matter of law, and in violation of ERISA.

39.     As the direct and proximate result of the actions of the Defendants, Dr. Patel has been caused to incur attorneys' fees in an amount currently not known to the Plaintiff. Dr. Patel has also suffered increased emotional distress and discomfort because of the actions taken by the Defendants in denying her benefits due under the policy.

40.     As the direct and proximate result of the Defendants' actions, Dr. Patel has lost benefits in an amount not known in full by Plaintiff but upon belief and information such loss approximates the amount of benefits due under the terms of the Benefit Plan for each month since December 1, 2015 and the amount Dr. Patel will continue to sustain each month until the benefits are paid in full.

## **REQUESTS FOR RELIEF**

Wherefore, plaintiff requests judgment against the Defendants, Aetna and Genesis, as follows:

A.     Ordering the Defendants, Genesis HealthCare Corporation and Aetna, Inc., to pay to Plaintiff all benefits due plaintiff under the Disability Plan retroactive to December 1, 2015.

B.     Declaring that all rights and benefits due Plaintiff are vested and nonforfeitable or, in the alternative, to award plaintiff a money judgment for all sums due and owing.

C.     Awarding Plaintiff prejudgment interest from the filing of this Complaint until the date of judgment.

D.     Awarding Plaintiff's attorney fees, court costs and all other reasonable costs incurred.

E.  Granting Plaintiff such other and further relief as the court may deem just and proper.

Dated: September 18, 2018

Respectfully Submitted,

The Plaintiff,

Hiral Patel

By her attorney,

/s/ Kurt S. Olson
Kurt S. Olson (NH Bar ID#12518)
31 Franklin Rd.
Salisbury, NH 03268
Tel. (603) 748-1960
Fax:(978) 681-6330
kolson@mslaw.edu